UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DANIEL L. GORMAN

        Plaintiff,

      v.               **REPORT AND RECOMMENDATION**
                               **08-CV-0251 (NAM)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.      Introduction

Plaintiff Daniel Gorman brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

## II.      Background

On December 27, 2004, Plaintiff filed an application for SSI, claiming an onset date of April 1, 2003 (R. at 24, 87-89).[2] Plaintiff alleges disability because of Type II Diabetes Mellitus; chronic bronchitis; right shoulder pain status post surgery; fatigue; hypertension; insomnia; a depressive disorder; and an anxiety disorder. His application

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated May 7, 2009.
[2] Citations to the underlying administrative record are designated as "R."

was denied initially on February 23, 2005 (R. at 24). Plaintiff filed a timely request for a hearing on April 1, 2005 (R. at 39).

On March 23, 2006, Plaintiff appeared before the ALJ (R. at 230). The ALJ considered the case *de novo* and, on April 26, 2006, issued a decision finding Plaintiff not disabled (R. at 35). On December 13, 2006, the Appeals Council remanded to the ALJ to re-evaluate the opinions of Plaintiff's treating physician, Dr. Soogree; to re-contact Dr. Soogree if needed; to re-evaluate Plaintiff's subjective complaints; to evaluate Plaintiff's mental impairments by means of the special technique analysis;[3] to provide support for the residual functional capacity ("RFC"); and to obtain evidence from a vocational expert ("VE") (R. at 65, 68-70). On May 22, 2007, a subsequent hearing was held (R. at 269). The ALJ issued a decision finding Plaintiff not disabled on August 17, 2007 (R. at 23). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on February 12, 2008 (R. at 6-9). On March 5, 2008, Plaintiff filed this action.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[4]  Based on

---

[3] The special technique encompasses four areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4). If an individual's impairment results in none or mild for the first three categories and none in the fourth, a finding of non-severe is generally appropriate. 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).

[4] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

the entire record, the Court recommends remand because the ALJ erred in applying the treating physician rule and in assessing Plaintiff's credibility.

### III.    Discussion

#### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for

---

[5] This five-step analysis is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

**B.    Analysis**

**1.  The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the date of his application, December 27, 2004 (R. at 15); (2) Plaintiff's status post left shoulder surgery, low back pain, status post right hand injury with discomfort, depressive disorder and adjustment disorder with anxious mood are severe impairments (R. at 15); (3) Plaintiff's cannabis use, hypertension, hyperlipidemia, diabetes mellitus, insomnia, and seasonal allergies/bronchitis are not severe (R. at 16); (4) Plaintiff's does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (R. at 16); (5) Plaintiff has the ability

to lift or carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk 6 hours in an 8-hour day but only 30 minutes at a time and sit 6 hours in an 8-hour day with no crawling, no lifting repetitively above shoulder level with the left upper extremity or repetitive pushing or pulling with the left upper extremity or manipulation with the right hand and occasional climbing stairs and ramps, balancing, stooping, kneeling and crouching. He must avoid moderate exposure to fumes, odors, dusts and gases. He can perform routine repetitive tasks, get along adequately with others, attend to work and maintain a schedule, work in a low stress environment defined as only occasional judgment or decision making required and only minor changes in the work setting

(R. at 18); (6) Plaintiff's statements concerning his pain and other symptoms were "not entirely credible" (R. at 21); (7) Plaintiff is not capable of performing his past relevant work (R. at 21); (8) Plaintiff is a "younger individual" (R. at 22); (9) Plaintiff "has a limited education and is able to communicate in English" (R. at 22); (10) Plaintiff can perform the position of new account clerk, order clerk, and surveillance system monitor (R. at 22). Ultimately, the ALJ found that Plaintiff was not under a 'disability' as defined by the Act, from December 27, 2004, his application date, through the date of his decision (R. at 23).

### 2.    Plaintiff's Claims:

Plaintiff argues that the Commissioner's decision is contrary to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues that a) the ALJ failed to correctly apply the treating physician rule; b) the ALJ erred in assessing Plaintiff's credibility; c) the ALJ failed to appropriately analyze Plaintiff's mental impairments; d) the ALJ's RFC finding is flawed; and e) the hypothetical given to the VE was flawed.

### a)  The ALJ Erred in Applying the Treating Physician Rule

Plaintiff argues that the ALJ did not follow the treating physician rule in evaluating Plaintiff's treating sources: i) Dr. Soogree; and ii) Dr. Patil and nurse practitioner Andrew Catalone. Plaintiff's Brief, pp. 15-19.

### i)  The ALJ Erred in Evaluating Dr. Soogree's Opinions

Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's treating physician, Dr. Soogree. Plaintiff's Brief, pp. 15-18. Plaintiff also argues that the ALJ erred in failing to re-contact Dr. Soogree. Id. Defendant argues that Dr. Soogree's opinions were not deserving of controlling weight because they "w[ere] not supported by his own clinical notes." Defendant's Brief, p. 17-18. Defendant also argues that the there was no duty to re-contact because the record was complete. Id.

According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.

---

[6] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Dr. Soogree treated Plaintiff for both his physical and mental impairments. Treatment notes date from April 5, 2004, to November 3, 2005 (R. at 200, 226). Dr. Soogree completed a medical source statement ("MSS") on March 15, 2006 (R. at 185-93). The MSS encompassed Dr. Soogree's opinions concerning Plaintiff's physical and mental impairments. Id.

t is clear from the ALJ's decision that not only did he did not afford Dr. Soogree's opinions 'controlling weight,' the ALJ failed to state what weight those opinions were granted. This was error. See Rodriguez v. Astrue, 2009 WL 637154, at *27 (finding error where the ALJ simply stated he was not granting Plaintiff's treating physicians controlling weight); see also 20 C.F.R. § 404.1527(d) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive.").

Although the ALJ did not state what weight he afforded Dr. Soogree's opinions in his MSS, he appears to have denied controlling weight to those opinions because they were internally inconsistent and not supported by clinical findings. For example, while discussing Dr. Soogree's opinions, the ALJ noted that Dr. Soogree

8

> opined that [Plaintiff] could never crouch or climb ladders, rarely twist and
> stoop and occasionally climb ladders. This opinion suggests that the
> claimant can never climb ladders and occasionally climb ladders.[7] This is
> inconsistent and suggests that Dr. Soogree was not particularly careful in
> filling out this assessment. Furthermore, the clinical evidence does not
> support that the claimant has limitations in sitting, standing or walking.

(R. at 19). The ALJ also found that the first mental status examination of Plaintiff

completed with by Dr. Soogree's office occurred in January 2006.[8] Id.  According to the

ALJ, this indicated that any of Dr. Soogree's opinions before January 2006 could not

have been based on clinical and diagnostic techniques. Id. The ALJ then went on to find

that this January 2006 examination was also inconsistent with Dr. Soogree's opinions.

Id.

If the ALJ finds a medical opinion is not based on clinical and diagnostic

techniques, or it contains an ambiguity or conflict, the ALJ has an obligation to re-

contact the treating source. See 20 C.F.R. § 404.1512(e)(1) ("We will seek additional

evidence or clarification from your medical source when the report from your medical

source contains a conflict or ambiguity that must be resolved . . . or does not appear to

be based on medically acceptable clinical and laboratory diagnostic techniques."). The

ALJ's failure to re-contact is error. See Taylor v. Astrue, 2008 WL 2437770, at *3

(E.D.N.Y. June 17, 2008) (finding error for the ALJ to not re-contact Plaintiff's treating

physician when he determined that the physician's opinion was "not well-supported by

objective medical evidence"); Martin v. McMahon, 2008 WL 4185698, at *2 (W.D.N.Y.

---

[7] A portion of the MSS form Dr. Soogree completed requested that he choose between never, rarely,
occasionally, and frequently for various functions (R. at 188). Dr. Soogree checked off two boxes, never
and occasionally, for Plaintiff's ability to climb ladders. Id. The function listed below the "ability climb
ladders," and the last function in the list, was left blank. Id. It is clear that Dr. Soogree erroneously
checked off two boxes in the ability to climb ladders while failing to check off a box indicating Plaintiff's
ability to climb stairs. Id.

[8] While it is clear the exam was administered at Dr. Soogree's office, it is unclear with which member of
Dr. Soogree's staff Plaintiff completed the exam.

Sept. 9, 2008) (finding error where the ALJ failed to re-contact Plaintiff's treating physician for clarification of ambiguities and conflicts in his opinions).

In this matter, the Court notes that the ALJ was previously made aware of his duty to re-contact Dr. Soogree. On November 17, 2006, the Appeals Council remanded, in part, for failure to properly evaluate the MSS completed by Dr. Soogree on March 15, 2006 (R. at 65-70). The Appeals Council stated that

> [t]he Administrative Law Judge gave minimal weight to [Dr. Soogree's] assessment indicating that it is not supported by findings, symptoms, test results, etc., in the doctor's treatment notes or in other medical evidence of record. Although not bound by Dr. Soogree's opinion, the Administrative Law Judge made no attempt to re-contact Dr. Soogree for clarification or to obtain additional evidence with respect to the claimant's exertional limitations.

(R. at 68) (internal citations removed). The Appeals Council then instructed the ALJ to

> [g]ive further consideration to the treating source opinion pursuant to the provisions of 20 CFR 416.927 and Social Security Rulings 96-2p and 96-5p . . . and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can do despite the impairments

(R. at 69) (internal citations removed). Thus, the ALJ was given the opportunity to re-contact Dr. Soogree to obtain clarification on his opinions, but failed to do so. The Court recommends remand to allow the ALJ a second opportunity to re-contact Dr. Soogree.

### ii) The ALJ Erred in Evaluating the Opinions of Dr. Patil and Nurse Practitioner Andrew Catalone

Plaintiff argues that the ALJ erred in discounting the opinions of psychiatrist Dr. Suresh Patil and nurse practitioner Andrew Catalone. Plaintiff's Brief, pp. 18-19. Defendant argues that the MSS was not supported by treatment notes. Defendant's

Brief, pp. 10-12. Defendant also argues that the MSS was both internally inconsistent as well as inconsistent with other evidence in the record. Id.

Nurse practitioner Andrew Catalone and Dr. Patil are both employed by the Oswego Hospital Behavioral Services Division ("OHBSD") (R. at 247, 242). The record indicates that Plaintiff began treatment at OHBSD on August 17, 2006 (R. at 247). Plaintiff was also admitted to OHBSD for psychiatric treatment from December 15, 2006, through December 18, 2006 (R. at 239, 241-42). On April 27, 2007, a mental MSS was completed and signed by both Mr. Catalone and Dr. Patil (R. at 249-53). Although unclear, it appears that Mr. Catalone completed the questionnaire that was co-signed by Dr. Patil. The ALJ granted this opinion "little weight" (R. at 20). Indeed, this was the only medical opinion to which the ALJ afforded any weight. The ALJ discounted these opinions because

> Mr. Catalone's findings of marked difficulties in concentration is inconsistent with his prior finding that the claimant's concentration and focus had improved with medication. . . . This assessment is given little weight because there is only documentation of 3 visits with Mr. Catalone in the file and Dr. Villas [sic] Patil has never seen the claimant. Furthermore, Mr. Catalone's assessment suggests that the claimant's cannabis abuse is the cause of some of his symptoms, not only his depression and anxiety.  Additionally, the treatment notes that are in the record do not support [a] marked limitation in maintaining concentration, persistence or pace or in social functioning.

(R. at 20).[9]

---

[9] In his analysis of weight, the ALJ repeatedly referred to the MSS as containing Mr. Catalone's opinions in an apparent attempt to obliquely discount the psychiatric MSS, given that Dr. Patil treated the Plaintiff and signed off on the document. Thus, the Court will not assume the ALJ was finding the opinion was not completed by a treating source without an indication from the ALJ that he was indeed making such a finding. Defendant, to his credit, also does not make this argument. The Court also notes that OHBSD was considered a clinic (R. at 249, 247, 242). "The Second Circuit has defined a treating source as the claimant's own physician, osteopath or psychologist (including an outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue,

At the outset, the Court finds that the ALJ's analysis is factually incorrect. First, treatment notes indicate that Dr. Patil has indeed met with Plaintiff (R. at 241-42). On December 15, 2006, Plaintiff was admitted for an inpatient stay at OHBSD (R. 241-42). Plaintiff was discharged three days later (R. at 239). A mental status examination, completed by Dr. Patil, was conducted at discharge (R. at 242). Thus, while it is unclear whether Dr. Patil met with Plaintiff on intake or during his stay at OHBSD, Dr. Patil met with Plaintiff at least once at the time of discharge from the clinic.[10] The ALJ also acknowledges this event later in his credibility analysis by stating that Plaintiff "admitted to Dr. Patil that he was using [cannabis] daily" (R. at 21). Second, treatment notes indicate that Plaintiff met with Mr. Catalone on at least five occasions, and not three: August 17, 2006; September 14, 2006; November 15, 2006; December 7, 2006; and January 4, 2007 (R. at 238, 243, 244, 246, 347). Third, Mr. Catalone's statements that Plaintiff's "concentration and focus had improved with medication" and experienced a "marked difficult[y] in concentration" are not necessarily inconsistent (R. at 20). It seems logical that an individual could improve from a worse state to a marked level of difficulty.

The Court finds other aspects of the ALJ's analysis faulty. The ALJ stated that "Mr. Catalone's assessment suggests that the claimant's cannabis abuse is the cause of some of his symptoms, not only his depression and anxiety" (R. at 20). It is true that in Dr. Patil's and Mr. Catalone's MSS, Plaintiff's cannabis use was repeatedly noted (R. at 249, 250). However, the Court could find no opinion in the MSS indicating Plaintiff's

---

2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (quoting Schisler v. Sullivan, 3 F.3d 563, 569 (2d Cir. 1993)) (internal quotations removed). Thus, even assuming, arguendo that Dr. Patil did not himself meet the longitudinal requirements of a treating source, the clinic did meet that requirement. Therefore, a report signed by him as a representative of OHBSD should be entitled to controlling weight.
[10] There are no treatment notes from Plaintiff's three day stay at OHBSD, simply a "discharge summary" (R. at 241-42).

mental impairments resulted from his cannabis use.   The Court was also unable to locate such a suggestion in treatment notes from OHBSD. Parenthetically, there is no evidence in the record that cannabis use causes mental illness nor was there any attempt by the ALJ to supplement the record with evidence in the broader scientific community that cannabis use contributes to symptoms or conditions experienced by Plaintiff. The ALJ is not permitted to substitute his personal biases and prejudices concerning drug use outside the regulatory scheme in determining the outcome of a disability case. See 20 C.F.R. 404.1527(d)(2); see also Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). ("We have likewise insisted that an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record.")

As previously stated, an ALJ may deny controlling weight to an opinion if that opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). The ALJ ended his analysis by finding that "the treatment notes that are in the record do not support [a] marked limitation in maintaining concentration, persistence or pace or in social functioning" (R. at 20). The only aspect of the ALJ's analysis that appears to qualify as one of the two previously stated reasons is this final statement. The ALJ failed to cite any evidence in the record to support this finding. It is therefore unclear whether the ALJ was finding that clinical and diagnostic techniques in treatment notes from OHBSD do not support the opinions, or whether the opinions are inconsistent with treatment notes from other sources in the record.

Defendant appears to support the ALJ's finding with the contention that a GAF[11] score of 65, opined in the MSS, is inconsistent with a determination "that plaintiff had 'marked' limitations in mental functioning." Defendant's Brief, p. 11; (R. at 249). A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR,* 34 (4th ed. 2000) (emphasis in original). Dr. Patil and Mr. Catalone also opined that Plaintiff had marked difficulties in maintaining social functioning and marked deficiencies of concentration, persistence or pace (R. at 251). The ALJ did not state that he discounted the MSS because of an internal inconsistency with Plaintiff's GAF score. However, had the ALJ found these findings to be inconsistent, as Defendant argues, this would have obligated him to re-contact Dr. Patil and Mr. Catalone to explain the perceived conflict. See 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved . . . ."). Therefore, the Defendant's argument is unavailing.

Moreover, even if the ALJ's finding was supported by substantial evidence, as to Plaintiff's "limitation[s] in maintaining concentration, persistence or pace or in social functioning," this merely diminishes the weight of those two opinions, not the entire MSS. The ALJ had an obligation to properly determine the weight of the other opinions in the MSS. See SSR 96-2P, 1996 WL 374188, at * 2 (S.S.A.) ("It is not unusual for a

---

[11] Global assessment of functioning.

single treating source to provide medical opinions about several issues . . . . Although it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not."); (R. at 20).

While not argued by Plaintiff, the Court notes that the ALJ failed to grant weight to the SSA consultative physicians. This was also error. 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . . .").

Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to a) state the weight he afforded to Dr. Soogree; b) re-contact Dr. Soogree for clarification of his opinions and to determine on what medical evidence those opinions are based; c) to carefully review the record when analyzing the weight to afford an MSS supplied by the OHBSD clinic, signed off by Dr. Patil, and Mr. Catalone; and d) state the weight he granted to the Social Security Administration ("SSA") consultative physicians.

### b)  The ALJ Erred in Evaluating Plaintiff's Credibility

Plaintiff argues that the ALJ did not follow the law in evaluating Plaintiff's credibility. Plaintiff's Brief, pp. 23-24.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel,

70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27

(2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the

claimant has medically determinable impairments, "which could reasonably be expected

to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p,

1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then

the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to

determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p,

1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12.

Because "an individual's symptoms can sometimes suggest a greater level of severity of

impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p,

1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[12] 20

C.F.R. §§ 416.929(c)(3)(i)-(vii).

     If the ALJ finds Plaintiff's pain contentions are not credible, he must state his

reasons "explicitly and with sufficient specificity to enable the Court to decide whether

there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL

4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp

604, 608 (S.D.N.Y. 1987)).

     The ALJ completed the two-step analysis by finding "that the claimant's medically

determinable impairments could reasonably be expected to produce the alleged

symptoms, but that the claimant's statements concerning the intensity, persistence and

---

[12] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii).

limiting effects of these symptoms are not entirely credible" (R. at 21). However, the ALJ did not engage in any meaningful evaluation of the factors. The ALJ's credibility analysis is largely a recitation of Plaintiff's testimony at the hearing. Although the ALJ noted Plaintiff's testimony pertaining to the first factor, his daily activities, there was no analysis of whether those daily activities were consistent with his claimed disability.

The ALJ also mentioned that Plaintiff's insomnia was explained by his sleeping during the day (R. at 21). It is unclear what the ALJ meant by this statement. Insomnia is not a "symptom[], such as pain," that requires a credibility analysis. 20 C.F.R. 416.929(c). Indeed, insomnia is a medically determinable impairment with which Plaintiff has been diagnosed (R. at 185). The ALJ acknowledged this diagnosis and ultimately found it not severe (R. at 16). The Court is aware that fatigue is a symptom of insomnia and may also be a symptom of pain. If the ALJ was attempting to evaluate Plaintiff's daily sleep habits as a "precipitating and aggravating factor[]" of fatigue, thereby eroding Plaintiff's credibility regarding pain, he must make this more clear. 20 C.F.R. 416.929(c)(3)(iii).

The only aspect of the ALJ's analysis that could be deemed valid a credibility finding, was his notation in his decision that Plaintiff's testified that he "smok[ed] marijuana now and then or a couple times a month" (R. at 21). The ALJ found this testimony "questionable since he reported that he was smoking it daily in December 2006, and he had misrepresented to psychiatric nurse practitioners that he was cutting down, but then admitted to Dr. Patil [on December 15, 2006] that he was using it daily still." Id. Even assuming the ALJ's finding was correct, this one contradiction hardly amounts to an analysis that was "set forth with sufficient specificity to permit intelligible

17

plenary review of the record." <u>Williams</u>, 859 F.2d 255, 260-1 (2d Cir. 1988) (<u>citing</u> <u>Carroll</u>, 705 F.2d 638, 643 (2d Cir. 1983)).

Moreover, the Appeals Council, on remand, instructed the ALJ to "[f]urther evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929) and Social Security Ruling 96-7p" (R. at 69). In the ALJ's first decision, he noted that Plaintiff's statements concerning his drug use were inconsistent (R. at 33). As previously stated, the only aspect of the ALJ's current credibility analysis that may be valid was his discussion concerning Plaintiff's inconsistent statements of drug use (R. at 21). Because this discussion is repetitive of the same analysis in his original decision, the Court finds that the ALJ failed to comply with the Appeals Council's order to [f]urther evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929) and Social Security Ruling 96-7p" (R. at 69). This failure to comply with the Appeals Council's error was also error worthy of remand. <u>See</u> <u>Scott v. Barnhart</u>, 592 F.Supp.2d 360, 371-72 (W.D.N.Y. 2009) (internal citations removed) ("The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand.").

Therefore, the Court recommends remand to allow the ALJ an opportunity to reassess Plaintiff's credibility in accordance with the previously stated law and in compliance with the Appeals Council's order.

### c)  The ALJ's Evaluation of Plaintiff's Mental Impairments is Necessarily Flawed

Plaintiff argues that the ALJ failed to properly analyze Plaintiff's mental impairments. Plaintiff's Brief, pp. 19-21.

Because of the previous errors in the treating physician and credibility analyses, the Court will not determine whether the ALJ's mental impairment analysis is supported by substantial evidence. It is expected that when the ALJ reconsiders his decision in accordance with the findings of error and the guidance set forth in this Report and Recommendation, he will properly assess the mental impairments alleged by Plaintiff. Allegation (a), (b).

### d)  The ALJ's RFC Finding is Necessarily Flawed

Plaintiff argues that the RFC is necessarily flawed due to errors in the ALJ's analysis of Plaintiff's treating physicians. Plaintiff's Brief, p. 19. Defendant argues that the RFC is supported by substantial evidence. Defendant's Brief, pp. 12-21.

The Court agrees with Plaintiff. As is the case here, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguabl[y] supported by substantial evidence, the Commissioner's decision may not be affirmed." Martone v. Apfel, 70 F.Supp.2d 135, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Therefore, on remand, the Court instructs the ALJ to reevaluate Plaintiff's RFC.

**e)  The Hypothetical Given to the VE is Necessarily Flawed**

Plaintiff argues that the hypothetical given to the VE was flawed based on the ALJ's previous errors. Plaintiff's Brief, pp. 21-23. Plaintiff also argues that the ALJ's language in the hypothetical given to the VE did not mirror the language in the RFC. Id.

Whether a hypothetical given to the VE is appropriate depends on whether the hypothetical fully encompasses Plaintiff's physical and mental limitations. See Magee v. Astrue, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir. 1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

As previously stated, the RFC was necessarily flawed because of errors in the ALJ's application of the treating physician rule and his analysis of Plaintiff's credibility. Allegation (d). Thus, the hypothetical given to the VE is also necessarily flawed.

The Court also notes the following error: in the RFC, the ALJ found that Plaintiff was capable of "minor changes in the work setting" (R. at 18). In the hypothetical given to the VE, the ALJ used the language "occasional changes in the work setting" (R. at 305). The Court need not reach whether the difference in terminology constitutes error worthy of remand because of the previous errors identified in this decision. However, "occasional" is a defined term for disability determinations "mean[ing] occurring from very little up to one-third of the time." SSR 83-10, at *5. "Minor" is not defined by the SSA, other than to define the minority status of a child by virtue of age, but has a general definition of "inferior in importance, size, or degree **:** comparatively unimportant." Minor, *Merriam-Webster's Online Dictionary*, http://www.merriam-

webster.com/dictionary/minor. Given the ambiguity, on remand, the ALJ must ensure

that any terms used in a hypothetical to a VE carry the same meaning as those used in

the RFC to ensure that the hypothetical fully encompasses Plaintiff's physical and

mental limitations. See Taylor v. Astrue, 2008 WL 3884356, at *17 (N.D.N.Y. Aug. 18,

2008) (finding no error where the "RFC finding was supported by substantial evidence,

and the hypothetical posed to [the VE] was congruent with that RFC finding").

## IV.    Conclusion

Based on the foregoing, it is recommended that Defendant's motion for judgment

on the pleadings should be DENIED; Plaintiff's cross motion for judgment on the

pleadings should be GRANTED in part and DENIED in part and REMANDED for

reconsideration.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


          Syracuse, New York
DATED:    November 24, 2009

### ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

21

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);  *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);  *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


Syracuse, New York
DATED:      November 24, 2009

22